# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 14, 2010        Decided January 14, 2011

No. 10-7013

KAREN VATEL,
APPELLANT

v.

ALLIANCE OF AUTOMOBILE MANUFACTURERS AND DAVID K.
MCCURDY,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00467)

———

*Lynn I. Miller* argued the cause for appellant. With her
on the briefs was *James R. Klimaski*.

*Ari Karen* argued the cause for appellees.

Before: BROWN, GRIFFITH, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: David McCurdy is President and CEO of the Alliance of Automobile Manufacturers. In November 2007, McCurdy fired his assistant, Karen Vatel. McCurdy asserted that he dismissed Vatel because they had incompatible styles of work and her performance therefore did not meet his expectations. Vatel sued, claiming that McCurdy fired her because of her race and gender. Finding that Vatel had produced insufficient evidence to undermine McCurdy's stated reason for firing her, the District Court granted summary judgment to McCurdy and his employer. We agree with the District Court and therefore affirm.

I

In June 2006, the interim president of the Alliance of Automobile Manufacturers (known as the AAM) hired Karen Vatel as his assistant. In December 2006, the AAM hired David McCurdy as the new President and CEO. Although McCurdy could have hired someone new as his assistant, he chose to retain Vatel after a positive lunch interview with her. But problems quickly developed in the working relationship between McCurdy and Vatel. Beginning in May 2007, Lori Johnson, the AAM's human resources manager, met regularly with Vatel to explain that McCurdy was frustrated with Vatel's performance.

McCurdy ultimately fired Vatel on November 1, 2007, telling her that their styles were incompatible. McCurdy later explained that he expected his assistant to be "strategic" and "proactive," but found Vatel rigid and unable to address problems before they affected him.

Vatel filed suit against the AAM and McCurdy in the District of Columbia Superior Court. Vatel alleged that

3

McCurdy terminated her because of her race and gender, in violation of the District of Columbia Human Rights Act, D.C. Code §§ 2-1402.01 and 2-1402.11(a). The defendants removed the action to the U.S. District Court for the District of Columbia based on diversity of citizenship among the parties. After discovery, the District Court granted the defendants' motion for summary judgment. Vatel appealed to this Court. We review the District Court's summary judgment *de novo*.

II

We analyze discrimination claims under the D.C. Human Rights Act in the same way that we analyze discrimination claims under the federal anti-discrimination laws. *See Gaujacq v. EDF, Inc.*, 601 F.3d 565, 576 (D.C. Cir. 2010). Once an employer has offered a legitimate reason for an employee's dismissal, the question at the summary judgment stage is whether the employee has "produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin." *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008).

McCurdy asserted that he dismissed Vatel because they had incompatible working styles and Vatel therefore did not meet his expectations for an assistant. This is a highly subjective explanation, which makes it difficult for Vatel to produce evidence casting doubt on it. We thus treat McCurdy's explanation "with caution." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1298 (D.C. Cir. 1998) (en banc). That said, Vatel does not dispute that incompatible working styles is a legitimate basis for a manager to fire an assistant.

4

With that background in mind, we turn to the question whether Vatel has produced sufficient evidence that McCurdy's assertion – that he fired Vatel because of incompatible working styles – is pretextual and that McCurdy intentionally discriminated against her. The record contains no direct evidence of discrimination – for example, a statement that itself shows racial or gender bias in the decision – that would generally entitle a plaintiff to a jury trial. The nature of Vatel's position means, moreover, that many of the methods that employment discrimination plaintiffs ordinarily use to demonstrate pretext are not available to Vatel. For example, Vatel cannot show that McCurdy treated other similarly situated employees differently based on race or gender, because, as the lone assistant, she had no similarly situated peers. *Cf. Brady*, 520 F.3d at 495. Vatel nonetheless claims that a jury could infer from the record evidence that McCurdy fabricated his explanation to mask his true motive: animus based on Vatel's race, gender, or both.

Vatel's argument faces a significant initial hurdle in that McCurdy himself selected Vatel to be his assistant less than a year before her dismissal. If McCurdy did not want to work with Vatel because of her race or gender, it would be odd to select her and then immediately start ginning up reasons to dismiss her. *See Waterhouse v. District of Columbia*, 298 F.3d 989, 996 (D.C. Cir. 2002). In affirming summary judgment in *Waterhouse*, we noted: "'when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to [that person] an invidious motivation that would be inconsistent with the decision to hire,' especially 'when the firing has occurred only a short time after the hiring.'" *Id.* (quoting *Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 560 (2d Cir. 1997)). The

same is true here. Although the fact that McCurdy initially selected Vatel does not *alone* suffice for summary judgment, it is probative evidence that McCurdy did not discriminate against Vatel on account of her race or gender when he dismissed her later that year. *See Czekalski v. Peters*, 475 F.3d 360, 368-69 (D.C. Cir. 2007).

Vatel has tried to undermine McCurdy's explanation by contending that they in fact had a positive working relationship and that McCurdy was (or should have been) satisfied with her performance. That argument is simply not tenable. By Vatel's own admission, Lori Johnson, the AAM's human resources manager, consistently said that McCurdy was frustrated with Vatel's performance, and Vatel herself stated that "McCurdy tried to avoid [her] at all costs." Vatel Dep. 128-29, 133, Sept. 15, 2008. The undisputed facts in this case overwhelmingly demonstrate problems in the working relationship; indeed, that was the reason for the regular meetings between Vatel and Johnson.

In light of the record evidence, Vatel's mere personal opinion that she and McCurdy had a positive working relationship is insufficient to surmount summary judgment. It is settled that "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (quotation marks and alterations omitted). Under the precedents, it is McCurdy's perception that is relevant. Here, the evidence overwhelmingly shows that McCurdy honestly and reasonably believed that their working styles were incompatible. That evidence requires summary judgment for the defendants. *See Brady*, 520 F.3d at 496 ("The question is not whether the underlying . . . incident occurred; rather, the issue is whether *the employer honestly and reasonably believed* that the underlying . . . incident occurred."); *George*

*v. Leavitt*, 407 F.3d 405, 415 (D.C. Cir. 2005) ("[A]n employer's action may be justified by a reasonable belief in the validity of the reason given even though that reason may turn out to be false.").

Vatel offers some subsidiary arguments, but none suffices to defeat summary judgment. For example, Vatel contests what was said in her meetings with Johnson, the human resources director. But the outcome of that dispute is immaterial. Even if Johnson failed to tell Vatel how to improve her performance, and even if Vatel did not expressly refuse to change, those facts would not undermine McCurdy's assertion that he did not find their working styles to be compatible.

Vatel also takes issue with some of McCurdy's statements in his deposition – in particular, his discussion of travel difficulties on a trip to Germany. Vatel denies that she was to blame for those problems. But Vatel's focus on the Germany trip does not advance her argument. To begin with, Vatel was not fired because of the Germany trip; she was fired because of an overall breakdown in the working relationship that caused her boss to lose confidence in her. In addition, the question whether Vatel was actually at fault for McCurdy's problems on the Germany trip is irrelevant if McCurdy believed she was. He clearly did (and still does), and Vatel has provided no evidence that McCurdy did not think she was responsible. *See Fischbach v. District of Columbia Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("Once the employer has articulated a non-discriminatory explanation for its action . . . the issue is not the correctness or desirability of the reasons offered but whether the employer honestly believes in the reasons it offers.") (quotation marks and alterations omitted); *see also Brady*, 520 F.3d at 495-96; *George*, 407 F.3d at 415.

On a different tack, Vatel also has suggested that the alleged problems in the working relationship and the regular sessions with Johnson reflected a plot by McCurdy to paper the record for the ultimate firing and thereby hide an improper racist or sexist motivation. But there is simply no probative evidence to support such a supposition. Moreover, any such theory would be inconsistent with the fact that McCurdy, knowing Vatel's race and gender, initially selected her to be his assistant. Under this Court's precedents, we cannot green-light a trial based on Vatel's mere speculation that McCurdy was feigning dissatisfaction with Vatel's work in order to hide his own allegedly improper motivation. *See Brady*, 520 F.3d at 495 ("If the employer's stated belief about the underlying facts is reasonable in light of the evidence . . . there ordinarily is no basis for permitting a jury to conclude that the employer is lying about the underlying facts."); *Carney v. American University*, 151 F.3d 1090, 1094 (D.C. Cir. 1998) (plaintiff's "factual proffer requires too much speculation to create a genuine issue of fact about [defendant's] motivations") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)); *see also Vickers v. Powell*, 493 F.3d 186, 195-96 (D.C. Cir. 2007).

In sum, having acknowledged that a dysfunctional working relationship is a legitimate ground for dismissal of an assistant, Vatel was required to produce sufficient evidence that, if believed, would undermine McCurdy's claim that he reasonably thought their working relationship was poor. Vatel failed to do so. On this record, any effort to portray their working relationship as anything other than dysfunctional is simply not plausible.

Vatel's submission thus boils down to the proposition that discrimination plaintiffs should receive jury trials as a

matter of course, on the theory that the question whether the defendant was motivated by racial or gender bias is always a question of fact for a jury. But that is not the way the law has developed. It is established that summary judgment and judgment as a matter of law can be appropriate in employment discrimination cases as elsewhere, and we have no basis for departing from that framework here.

* * *

In light of the facts of this case, we find summary judgment for the defendants appropriate. Because of the distinctive relationship between a manager and his or her assistant, the principle that (as Vatel herself acknowledges) a breakdown in the manager-assistant relationship can be a legitimate basis for dismissal, the fact that McCurdy himself selected Vatel for the position the same year that he dismissed her, the overwhelming evidence that McCurdy and Vatel quickly developed a dysfunctional working relationship, the lack of record evidence to undermine that conclusion, and the absence of any direct evidence of race or sex discrimination in the record, we affirm the judgment of the District Court.

*So ordered.*