# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 8, 2011          Decided December 16, 2011

No. 10-5169

NATIONAL ASSOCIATION OF HOME BUILDERS,
APPELLANT

v.

UNITED STATES ARMY CORPS OF ENGINEERS, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:07-cv-00972)

*Robert R. Gasaway* argued the cause for appellant.  With him on the briefs were *Jeffrey Bossert Clark*, *William H. Burgess*, and *Aaron L. Nielson*.

*M. Reed Hopper*, *James S. Burling*, *Damien M. Schiff*, and *Elizabeth Gaudio* were on the brief for *amici curiae* Pacific Legal Foundation, et al. in support of appellant.

*Aaron P. Avila*, Attorney, U.S. Department of Justice, argued the cause for appellees.  With him on the brief were *Jessica O'Donnell* and *Ellen J. Durkee*, Attorneys.  *Lisa E.*

*Jones*, Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney, entered appearances.

*Jon P. Devine Jr.* was on the brief for *amici curiae* Natural Resources Defense Council, et al. in support of appellees.

Before: HENDERSON, *Circuit Judge*, and WILLIAMS and RANDOLPH, *Senior Circuit Judges*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

*Circuit Judge* HENDERSON concurs in the judgment.

WILLIAMS, *Senior Circuit Judge*:  Invoking its authority under § 404(e) of the Clean Water Act ("CWA"), 33 U.S.C. § 1344(e), the U.S. Army Corps of Engineers issued a generic nationwide permit ("NWP 46") allowing persons to secure approval for qualifying discharges into "waters of the United States" without going through the more laborious process of securing an individual permit.  The National Association of Home Builders ("NAHB") appeals from the district court's dismissal of its challenge to the Corps's authority to issue the permit.  Although the district court held that the NAHB had standing to pursue its claim, it ultimately granted summary judgment for the Corps on the merits, finding that the terms of the permit survived the NAHB's legal challenges.  Because we find that the NAHB lacked standing to bring its suit, we vacate and remand with instructions to dismiss the case.

* * *

The CWA forbids the discharge of pollutants into the "waters of the United States," 33 U.S.C. § 1362(7), except when done pursuant to a valid permit, see *id*. §§ 1311(a),

1344. The CWA divides the authority to issue such permits between the Corps and the EPA; the Corps has been granted the power to issue permits only for discharges of "dredged or fill material." *Id*. § 1344(a).

Permits issued by the Corps fall into two categories: individual and general. Individual permits are granted on a case-by-case basis and involve a costly review process, often requiring extensive documentation regarding the specific site, public notice and comment, and sometimes a public hearing. See 33 C.F.R. pt. 325. In contrast, general permits cover entire "categor[ies] of activities" and often allow parties to proceed with much less red tape than is involved in obtaining individual permits, and in some instances even without notification to the Corps. See 33 U.S.C. § 1344(e); 33 C.F.R. § 325.2(e); *id*. pt. 330. General permits can last up to five years, at which point they must be reissued or left to expire, 33 U.S.C. § 1344(e)(2); they can be limited to a specific state or region, or may apply nationwide, hence "nationwide permits" or "NWPs." *Id*. § 1344(e); 33 C.F.R. pt. 330.

In March 2007, the Corps reissued all its then-outstanding NWPs and issued six new ones, including NWP 46, which authorized the discharge of dredged or fill material into certain "non-tidal ditches." Reissuance of Nationwide Permits, 72 Fed. Reg. 11,092, 11,190 (Mar. 12, 2007). Like many general permits, NWP 46 requires permittees to provide the Corps with written pre-construction notification, which, while costly, is less so than the individual permitting process. *Id*. (requiring those seeking authorization under NWP 46 to submit pre-construction notification per the terms of "general condition 27"); *id*. at 11,194-95 (general condition 27).

In order to fall within NWP 46's scope, a ditch must (1) be "[c]onstructed in uplands"; (2) "receive water from an area determined to be a water of the United States prior to the

construction of the ditch"; (3) "divert water to an area determined to be a water of the United States prior to the construction of the ditch"; and (4) itself be "determined to be [a] water[] of the United States." *Id.* at 11,190. We will return to the fourth of these criteria shortly. Additionally, NWP 46's expedited process is off limits to those whose discharge would cause the "loss" of more than one acre of waters of the United States. *Id.*

The NAHB filed suit claiming that, by issuing NWP 46, the Corps had unlawfully asserted jurisdiction over upland ditches, which it contends are categorically excluded from being "waters of the United States" and thus are categorically not subject to CWA regulation. Corrected Complaint ¶¶ 25-27, 29. The Corps moved for summary judgment. The district court found that the NAHB had standing to pose these (and related) legal challenges, finding that NWP 46 had caused the NAHB's members injury by leaving them "unsure of whether ditches they construct fall under" the Corps's jurisdiction, and that that uncertainty would force many to waste time and money by unnecessarily seeking authorization. *Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 699 F. Supp. 2d 209, 214 (D.D.C. 2010). Ultimately, however, the district court granted the Corps's motion on the merits, and the NAHB now appeals. We review *de novo*. *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1246 (D.C. Cir. 2011).

\* \* \*

A membership organization such as the NAHB can assert standing on behalf of its members only if "at least one" of these members would have standing on their own. *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002) (citing *Hunt v. Wash. State Apple Advertising Comm'n*, 432 U.S. 333, 342-43 (1977)). Although it is undisputed that the NAHB

qualifies to advance the claims of its members, we find that it has failed to show that any member had standing.

Article III standing requires that a plaintiff allege an actual or imminent injury that is both fairly traceable to the challenged action and likely redressable by the court proceeding. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Here, the injury ostensibly suffered by the NAHB's members is the "affirmative and antecedent determination [by the Corps] in favor of jurisdiction over upland ditches" and the resulting coercive effect this has on their behavior. Appellant's Reply Br. 5. The NAHB claims that NWP 46 puts its members between the Scylla of complying (perhaps unnecessarily) with the Corps's permitting scheme and the Charybdis of risking criminal or civil penalties under the CWA. Those wishing to fill ditches have no way of knowing in advance whether their ditch is a "water of the United States" and thus whether they need to seek a permit under NWP 46. The uncertainty, and the subsequent alterations to behavior that it causes, the NAHB says, constitute legal injury.

Assuming the adequacy of this injury, it is not fairly traceable to NWP 46. The risk of sanctions attendant on filling upland ditches without Corps approval predates, and is in no way aggravated by, the issuance of NWP 46. Seven years before issuing NWP 46, for example, the Corps made clear that upland ditches would under some circumstances be considered to be waters of the United States. "Drainage ditches constructed in uplands that connect two waters of the United States may be considered waters of the United States if those ditches constitute a surface water connection between those two waters of the United States." Final Notice of Issuance and Modification of Nationwide Permits, 65 Fed. Reg. 12,818, 12,823-24 (Mar. 9, 2000). And the Corps acted on this belief, asserting jurisdiction under the CWA to

regulate some non-tidal ditches years before it promulgated NWP 46. See, e.g., *United States v. Deaton*, 332 F.3d 698, 702 (4th Cir. 2003) (upholding Corps's assertion of jurisdiction over a "roadside ditch"). Indeed, the NAHB's Vice President for Legal Affairs acknowledged that the Corps had consistently suggested that at least some upland ditches were subject to CWA jurisdiction, asserting in an affidavit that, "[i]n [his] experience," the Corps "routinely consider[ed] non-tidal upland ditches to be 'waters of the United States' and accordingly require[d] NAHB members to obtain CWA permit coverage for discharges into such ditches." Decl. of Duane J. Desiderio ¶ 11 ("Desiderio Decl."), Joint Appendix ("J.A.") 83. He pointed out that the organization had had a "long history of devoting its associational resources" to combating the Corps's claim. *Id*. ¶ 27, J.A. 90. Thus, by the time NWP 46 issued, the Corps had routinely signaled that, although upland ditches were not *generally* within its jurisdiction, some ditches certainly could be. See Final Rule for Regulatory Programs of the Corps of Engineers, 51 Fed. Reg. 41,206, 41,217 (Nov. 13, 1986) (noting that upland ditches were "generally" not jurisdictional but explicitly reserving the right to decide the status of an individual ditch on a case-by-case basis). In its brief the NAHB implicitly recognizes as much, occasionally suggesting that the Corps viewed ditches as "wholly" or "entirely" beyond its jurisdiction, while each time, doubtless in the interest of credibility and candor, asserting the parallel, but weaker claim that the Corps viewed ditches as only "generally" outside its mandate. See Appellant's Br. 60 (Corps viewed ditches as "wholly or generally" outside its jurisdiction); *id*. 64 (Corps viewed ditches as "entirely" or "generally" outside its jurisdiction).

The fourth criterion for NWP 46's accelerated authorization process limits eligibility to upland ditches that are determined to be "waters of the United States." This

logically rests on a premise that at least *one* such ditch is a water of the United States, and under some circumstances such an assertion of jurisdiction might afford standing to potentially affected parties. The NAHB poses just such a hypothetical, in which the Corps issues a new general permit "purporting to allow homeowners to turn on their water taps." See Appellant's Reply Br. 5. In that case, the permit would represent an unprecedented assertion of jurisdiction over a previously unregulated body of water and would, for the first time, put parties on notice that their indoor plumbing might be a "water of the United States," and that its use required Corps authorization. In contrast, NWP 46 has not in the slightest increased the threat of Corps claims of jurisdiction, and compels no additional action (or inaction) by NAHB members to limit their exposure to penalties for proceeding without Corps authorization. Nor, to put it in terms of redressability, would our vacatur of NWP 46 in any way diminish the threat they face. Indeed, all such an order could accomplish would be to *eliminate* NAHB members' ability to use NWP 46's relatively quick procedure to get protection from CWA penalties.

The NAHB mistakenly invokes our 2005 decision, *NAHB v. Army Corps of Eng'rs*, 417 F.3d 1272 (D.C. Cir. 2005), where we found that the NAHB had standing to challenge several NWPs. But in that case the Corps had altered the terms of existing NWPs, reducing eligibility by tightening limits on the maximum acreage that might be affected by a proposed action. *Id.* at 1276, 1277, 1280, 1288. Here the NAHB can claim no such injury. As we have seen, NWP 46's only alteration of the baseline circumstances was in favor of its members, enabling them to get authorization for projects arguably subject to Corps jurisdiction under simpler procedures than those otherwise applicable.

We hasten to add that the historical baseline is not the only possible measure of injury. Suppose in its very first NWP (by hypothesis affording an authorization process simpler than that of the pre-existing regime of individual permits) the Corps had (as it does here) limited eligibility to projects causing no more than one acre's "loss" of waters of the United States. The NAHB would then have standing to claim on behalf of its members that the requirement was irrational because projects causing, say, two acres' loss, had no greater impact on the values protected by the CWA. If persuaded on the merits, we could afford relief by ordering the Corps to relax the one-acre ceiling. And, of course, if the NAHB claimed defects in the process by which the Corps had arrived at the one-acre maximum, it would likely have standing, see *Lujan*, 504 U.S. at 572 n.7, and we could remedy the claim by remanding to the Corps for further consideration under proper procedures.

But the NAHB makes no such claims. The only injury it asserts—the behavioral caution deriving from the Corps's assertion of jurisdiction over upland ditches and the resulting threat of enforcement—has no relation to any of the procedural failures it alleges. The NAHB does not ask us to redraw the boundaries of NWP 46, but rather seeks a judgment forcing revocation of NWP 46 altogether. But as the NWP did nothing to worsen (from the NAHB's perspective) the Corps's persistent view that some upland ditches may be jurisdictional, this remedy would be of no use to the NAHB or its members.

The NAHB also seeks a declaratory judgment, perhaps one that would simply declare upland ditches to be off limits altogether. To the extent that such a declaration would assist the NAHB, that is simply because the injury that the NAHB and its members really suffer from is the cloud cast by the

antecedent jurisdictional threat; for relief against that threat, NWP 46 is simply irrelevant.

\* \* \*

The NAHB also makes a claim to standing in its own right, submitting an affidavit at the district court pointing to the "associational resources" it spent commenting on and responding to NWP 46. Desiderio Decl. ¶¶ 25-41, J.A. 89-95. But "[t]he mere fact that an organization redirects some of its resources to litigation and legal counseling in response to actions or inactions of another party is insufficient" for standing. *Nat'l Taxpayers Union, Inc. v. United States*, 68 F.3d 1428, 1434 (D.C. Cir. 1995) (quoting, in parenthetical, *Ass'n for Retarded Citizens v. Dallas Cnty. Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir. 1994)). Moreover, the passage of NWP 46 has done nothing to hinder the NAHB's ability to fulfill its regular mission of informing and counseling its members of developments in government regulation. See *id*.

\* \* \*

For the foregoing reasons, we vacate the judgment of the district court and remand the case with instructions to dismiss for want of jurisdiction.

*So ordered.*