# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 24, 2013          Decided June 3, 2014

No. 12-5070

THEODORE R. WILSON,
APPELLANT

v.

TIMOTHY C. COX, CHIEF OPERATING OFFICER, ARMED
FORCES RETIREMENT HOME AND UNITED STATES OF
AMERICA,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:06-cv-01585)

———

*Eric D. McArthur*, appointed by the court, argued the cause as *amicus curiae* in support of appellant. With him on the briefs was *Jeffrey T. Green*, appointed by the court.

*Sobia Haque*, Special Assistant U.S. Attorney, argued the cause for appellees. With her on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Jane M. Lyons*, Assistant U.S. Attorney, entered an appearance.

Before: KAVANAUGH and SRINIVASAN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by Circuit Judge SRINIVASAN.

SRINIVASAN, *Circuit Judge*: Theodore Wilson, a former employee of the Armed Forces Retirement Home-Washington, alleges that his termination from his position as a security guard was motivated by discrimination based on age in violation of the Age Discrimination in Employment Act. The district court, determining that no reasonable factfinder could conclude that Wilson was discharged because of his age, granted summary judgment in favor of the defendants. Wilson, however, introduced evidence of two statements made by the person who effected his termination, both of which are indicative of a discriminatory motive. Because those statements, if proven to have been made, would permit a reasonable factfinder to conclude that age-based discrimination led to Wilson's ouster, we reverse and remand for trial proceedings.

**I.**

We consider the facts in the light most favorable to Wilson, the party against whom summary judgment was granted. *See Hampton v. Vilsack*, 685 F.3d 1096, 1099 (D.C. Cir. 2012). Wilson retired from the military in 1974 after having accumulated more than twenty-three years of service in the Air Force and Army. In May 2001, when Wilson was sixty-nine years old, the Armed Forces Retirement Home-Washington (the Home) hired him as a security guard. The Home is one of two facilities operated by the Armed Forces Retirement Home (AFRH), an executive agency. *See* 24 U.S.C. § 411(a). The other AFRH facility is located in Gulfport, Mississippi. Both facilities provide "residences and related services for certain retired and former members of the Armed Forces." *Id.* § 411(b).

When he began his work as a security guard at the Home, Wilson did not reside there. In December 2002, Wilson became a resident. At the time, the Home operated a resident employee

program under which residents could work at the Home in various positions, including in security and health care services. Wilson decided to become a resident in part because he could continue his employment at the Home as a security guard. The Home's chief of security described Wilson as a "very good employee."

In 2002, Timothy Cox became the AFRH's Chief Operating Officer. Cox decided to replace the resident employee program with a resident stipend program. Under the stipend program, residents could earn no more than $120 per month for twelve hours of work in a "supportive role." Any additional work would be considered an uncompensated donation to the Home. In January 2004, as a result of the dissolution of the resident employee program, the Home terminated Wilson's employment. Wilson was then seventy-one years of age.

Cox met with the Home's residents about his decision to abolish the resident employee program. In the meeting, Cox told the residents, "you didn't come here to work, you came here to retire." Cox also discussed his decision in a telephone conversation with Wilson's Equal Employment Opportunity (EEO) counselor. According to the counselor, "[a]nother issue Mr. [C]ox had with the older guards at Armed Forces Retirement Home, 'was that they were not doing their jobs properly, as from time to time they would be found asleep, which was not safe for a government agency in DC, what with all the threats since 9/11.'" The counselor attributed the language within single quotation marks directly to Cox. Cox later testified that he decided to eliminate the resident employee program in order to save costs, assure a better-trained work force, and achieve consistency with AFRH's Gulfport facility, which had no resident employee program.

After Wilson's termination, he contacted his EEO counselor, but the counselor was unable to resolve the dispute

informally. In June 2004, Wilson filed a formal EEO complaint. The Equal Employment Opportunity Commission found that there had been no discrimination, and the Merit Systems Protection Board denied Wilson relief.

In September 2006, Wilson filed this action in the district court against Cox and the United States, alleging, as is relevant here, that the termination of his employment violated the Age Discrimination in Employment Act (ADEA). Wilson subsequently sought leave to amend his complaint to allege that his termination violated his due process rights.

On December 5, 2011, the district court granted summary judgment in favor of the defendants. *Wilson v. Cox*, 828 F. Supp. 2d 20, 38 (D.D.C. 2011). The defendants argued that the decision to abolish the resident employee program and terminate Wilson's employment did not stem from any discriminatory motive, but instead aimed to save money, to ameliorate concerns about the capabilities of the Home's security staff, and to attain operational consistency with the Gulfport facility. The district court concluded that Wilson failed to demonstrate that those legitimate, nondiscriminatory rationales were a pretext for discrimination. *See id.* at 30-33. The court also addressed Cox's statements that the Home's residents were "here to retire" rather than to work and that he had concerns about the older security guards falling asleep on the job. In the court's view, the former statement "cannot be taken as evidence of an impermissible assumption based on [the guards'] ages," *id.* at 34, and the latter statement exhibited concerns about performance rather than age, *id.* at 33. The court also denied Wilson's motion to amend his complaint to allege a due process violation, holding that any amendment would be futile because Wilson lacked a protected property interest in his continued employment. *Id.* at 35-36. At the time that the district court granted summary judgment to the defendants, Wilson had conducted no discovery.

Wilson now appeals the district court's grant of summary judgment on his ADEA claim. In addition, Wilson contends that the district court erred in granting summary judgment before he had any opportunity to conduct discovery, and in denying him leave to amend his complaint to add a due process claim.

**II.**

The ADEA requires that "[a]ll personnel actions affecting employees . . . who are at least 40 years of age . . . in executive agencies . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a). We generally apply the same approach in ADEA cases under that provision as we do in Title VII cases. *See Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013); *Hall v. Giant Food, Inc.*, 175 F.3d 1074, 1077 (D.C. Cir. 1999); *see also Ford v. Mabus*, 629 F.3d 198, 203-07 (D.C. Cir. 2010). At the summary judgment stage, the "operative question" is whether "the employee produced sufficient evidence for a reasonable jury to find that . . . the employer intentionally discriminated against the employee on the basis of" age. *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (per curiam) (ellipsis in original) (quoting *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008)); *see Barnett*, 715 F.3d at 358. If "the plaintiff offers direct evidence of discriminatory intent, that evidence will 'generally entitle a plaintiff to a . . . trial.'" *Ayissi-Etoh*, 712 F.3d at 576 (quoting *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011)). A "statement that itself shows . . . bias in the employment decision" qualifies as direct evidence. *Id.* (quoting *Vatel*, 627 F.3d at 1247) (brackets omitted).

Wilson has produced two statements that constitute direct evidence of age discrimination, entitling him to proceed to trial. Both statements came from Cox, who made the decision to terminate the resident employee program, causing Wilson's discharge. In the first statement, Cox told the Home's residents

that "you didn't come here to work, you came here to retire."  In the second statement, Cox explained to the EEO counselor that he had concerns about the older security guards because "they were not doing their jobs properly, as from time to time they would be found asleep, which was not safe for a government agency in DC, what with all the threats since 9/11."

A reasonable factfinder could conclude from those statements that a discriminatory intent motivated the decision to abolish the resident employee program and terminate Wilson's employment.  Both statements indicate the sort of "inaccurate and stigmatizing stereotypes" that led Congress to enact the ADEA. *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).  In particular, as the Supreme Court has explained, it "is the very essence of age discrimination for an older employee to be fired because the employer believes that productivity and competence decline with old age." *Id.*

Here, a reasonable factfinder could conclude that Cox's statement that the Home's residents were "here to retire," rather than "to work," exhibits just such a discriminatory stereotype.  Interpreted in the light most favorable to Wilson, the statement is indicative of an inaccurate and discriminatory assumption that older residents should not want to work or would prefer not to work.  In Wilson's case, in fact, the opposite was true: Wilson became a resident of the Home in part precisely because he could continue working there as a security guard.  Wilson was there to work, not to retire.

The defendants contend that Cox's statement in fact did not exhibit age-based discrimination because it focused on retirement, not age.  The defendants are fully free to advance that argument at trial; but at the summary judgment stage, an alternative interpretation of that kind cannot overcome the need to draw inferences in the non-moving party's favor. *See Pardo-Kronemann v. Donovan*, 601 F.3d 599, 604-06 (D.C. Cir. 2010).

We must interpret the statement in the light most favorable to Wilson, and viewed in that light, the statement manifests discriminatory stereotyping. Moreover, when Cox sought to explain his statement to Wilson's EEO counselor, Cox stated that the AFRH "allowed the residents to work to make them feel productive, not because they were entitled to the positions." That statement, viewed most favorably to Wilson, tends to reinforce the stereotype that older workers fall short in productivity and thus should have no entitlement to employment. The Home, that is, sought to make the older employees "feel productive" notwithstanding that they were in fact unproductive. A reasonable factfinder could conclude that Cox's statements exhibit a discriminatory intent.

The same is true of Cox's statement to the EEO counselor that one of his problems "with the older guards at Armed Forces Retirement Home, 'was that they were not doing their jobs properly, as from time to time they would be found asleep.'" While Cox in that statement expressed a general concern about a perceived tendency of older guards to fall asleep, he testified that he had heard about only one such incident. Additionally, the chief of resident services testified that he had never heard any reports about any guard sleeping on the job. Even if Cox in fact knew of one instance in which a guard fell asleep on the job, a statement indicating a generalized concern about older guards as a group, based on one incident alone, is suggestive of impermissible, inaccurate stereotyping. A reasonable factfinder could conclude that Cox attributed sleepiness to all older guards as a class and terminated the resident employee program on that discriminatory basis.

Because Cox's statements constitute direct evidence of discrimination entitling Wilson to proceed to trial, we need not review the district court's conclusion that the defendants' proffered, nondiscriminatory rationales for Wilson's termination were non-pretextual. At trial, the parties will have a fresh

opportunity to present evidence about the motivation for abolishing the resident employee program and terminating Wilson's employment, and the factfinder will assess and determine, in light of all of that evidence, whether the decision stemmed from a discriminatory motive. We also have no occasion to address Wilson's contention that the district court erred in granting summary judgment before affording him any discovery: the parties presumably will have the opportunity to conduct discovery before trial.

Finally, Wilson challenges the district court's denial of leave to amend his complaint to add a due process claim. To establish that his termination violated due process, Wilson must demonstrate that he possessed a property interest in continued employment. *See, e.g.*, *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). In the district court, Wilson based his claim of a protected property interest on the Home's EEO policy. The district court rejected that argument and denied him leave to amend his complaint on grounds of futility. On appeal, Wilson no longer relies on the Home's EEO policy. Instead, he presents a distinct argument of a protected property interest based on his status as a preference-eligible veteran. Although we ordinarily decline to hear arguments raised for the first time on appeal, *see District of Columbia v. Air Fla., Inc.*, 750 F.2d 1077, 1084-85 (D.C. Cir. 1984), the defendants do not argue that Wilson forfeited his new due process argument, *see Catholic Health Initiatives Iowa Corp. v. Sebelius*, 718 F.3d 914, 922 n.6 (D.C. Cir. 2013) ("[W]e construe [the party] as having itself waived any waiver argument."). Rather than consider and resolve Wilson's new due process argument in the first instance on appeal, we leave it to the district court to do so on remand.

9

\*   \*   \*   \*   \*

We reverse the district court's grant of summary judgment to the defendants on Wilson's ADEA claim and remand for proceedings consistent with this opinion.

*So ordered.*