# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

No. 22-7101

September Term, 2023

FILED ON: MAY 1, 2024

MEHDI MOINI,

APPELLANT

v.

ELLEN M. GRANBERG, IN HER OFFICIAL CAPACITY AS PRESIDENT, GEORGE WASHINGTON UNIVERSITY,

APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-03126)

———

Before: SRINIVASAN, *Chief Judge*, RAO and PAN, *Circuit Judges*.

## J U D G M E N T

This case was considered on the record from the United States District Court for the District of Columbia and on the briefs and arguments of the parties and court-appointed amicus. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is:

**ORDERED** that the order of the district court, entered on May 13, 2022, is **AFFIRMED.**

\* \* \*

Dr. Mehdi Moini, an Iranian chemist, was a professor at George Washington University ("GW" or "the University") who was denied tenure. He sued the University alleging racial discrimination and breach of contract in his tenure process. The district court granted the University's motion for summary judgment. On appeal, court-appointed amicus argues for the first time that the University denied Dr. Moini tenure in retaliation for a prior discrimination lawsuit that he filed against a past employer. We hold that the retaliation claim is forfeited because it was not raised below and affirm the district court's grant of summary judgment on the discrimination and contract claims.

I.

Dr. Moini began working at GW in January 2014.[1] He was hired as a tenure-track associate professor of forensic chemistry in the Department of Forensic Sciences (the "Department"), within the Columbian College of Arts and Sciences ("the College"). GW put Dr. Moini on a "fast track" to tenure due to his prior experience, which entitled him to receive a tenure decision within three-and-a-half years, rather than the usual seven. Dr. Moini previously had worked at the University of Texas at Austin ("UT Austin"). When his contract with UT Austin was not renewed in 2008, he sued that university for national-origin, age, and race discrimination. *See Moini v. Univ. of Tex. at Austin*, 2010 WL 11677609, at *2 (W.D. Tex. Oct. 7, 2010); *Moini v. Univ. of Tex. at Austin*, 832 F. Supp. 2d 710, 714 (W.D. Tex. 2011).

In June 2015, GW amended its Faculty Code to require tenure applicants to demonstrate "excellence" in teaching. Previously, the Faculty Code had required only "professional competence" in teaching. Starting in the Fall 2015 semester, students could evaluate teachers individually. Before submitting his tenure application, Dr. Moini received individual evaluations in four courses at GW. In student evaluations for three out of those four courses, his "overall rating of the instructor" fell below the Department average.

Dr. Moini applied for tenure in September 2016. Due to concerns about his teaching record, the Department initially was unwilling to vote in favor of tenure and instead sought to secure an extension of the tenure clock to give him more time to demonstrate teaching excellence. After higher-level University leaders denied that request, however, the Department voted unanimously in favor of tenure. The College's tenure committee, the Dean of the College, and the Provost all disagreed with the Department's recommendation, finding that Dr. Moini's application lacked evidence of teaching excellence. The Faculty Senate Executive Committee then found that there were "extenuating circumstances" that made Dr. Moini's teaching environment difficult and recommended that Dr. Moini's tenure clock be extended by two years so that he could improve his teaching. But then-GW President Steven Knapp disagreed. He stated that Dr. Moini had spent two decades teaching at institutions in Texas, and he therefore had ample time "to develop his teaching skills in advance of arriving at GW." J.A. 473. After President Knapp's determination, Provost Forrest Maltzman informed Dr. Moini that he would be denied tenure.

Dr. Moini then embarked on an extensive internal grievance process at GW. His efforts ultimately were unsuccessful. Although an Appeals Panel found that it was arbitrary to deny Dr. Moini tenure "based solely on student evaluations of a one-credit hour required seminar course," the Panel's determination was overruled by Provost Maltzman. J.A. 626–27. Provost Maltzman found compelling reasons to non-concur with the Appeals Panel decision, again citing the excellence-in-teaching standard. The Executive Committee of the Board of Trustees voted to

---

[1] The named defendant is Ellen Granberg, the current President of GW. Throughout the opinion, we refer to the University as the defendant, as Dr. Moini alleged in his complaint.

uphold the university's decision against tenure, conclusively resolving the issue against Dr. Moini. Dr. Moini's employment with GW ended in September 2018.

Dr. Moini filed his pro se complaint in the district court in October 2019. In April 2020, the district court dismissed Dr. Moini's Title VII and D.C. Human Rights Act claims as time-barred. After discovery, both parties cross-moved for summary judgment on the remaining claims. The district court granted the University's motion for summary judgment and denied Dr. Moini's cross-motion. Dr. Moini appealed. We appointed amicus to submit briefing in support of Dr. Moini's position on certain issues.[2]

## II.

We review the district court's grant of summary judgment de novo. *Wheeler v. Georgetown Univ. Hosp.*, 812 F.3d 1109, 1113 (D.C. Cir. 2016). To prevail on a motion for summary judgment, a party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is appropriately granted when, viewing the evidence in the light most favorable to the non-movants and drawing all reasonable inferences accordingly, no reasonable jury could reach a verdict in their favor." *Lopez v. Council on Am.-Islamic Rels. Action Network, Inc.*, 826 F.3d 492, 496 (D.C. Cir. 2016). While we generally construe pro se plaintiffs' pleadings more liberally, pro se plaintiffs are held to the same evidentiary burdens as those represented by counsel at summary judgment. *See Oviedo v. Wash. Metro. Area Transit Auth.*, 948 F.3d 386, 397 (D.C. Cir. 2020) ("While we liberally construe pro se pleadings, pro se litigants do not have a license to ignore the Federal Rules of Civil Procedure." (cleaned up)); *see also Prunté v. Universal Music Grp.*, 699 F. Supp. 2d 15, 21–22 (D.D.C. 2010) (quoting *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987)), *aff'd*, 425 F. App'x 1 (D.C. Cir. 2011).

## III.

On appeal, Dr. Moini and court-appointed amicus collectively present three types of claims: a § 1981 discrimination claim, a § 1981 retaliation claim, and contract claims rooted in District of Columbia law. The record shows no dispute of material fact as to the first and third of

---

[2]    We directed the amicus and the parties to brief:

(1) whether "Middle Eastern" is a race for the purpose of a claim under 42 U.S.C. § 1981, and if so, whether a reasonable jury could conclude that appellant is a member of such a race; and (2) whether a plaintiff advancing a claim under § 1981 based on alleged employment discrimination is required to establish a breach of contract.

Per Curiam Order Appointing Amicus, No. 22-7101 (May 8, 2023). We do not decide those questions in our disposition of this case.

those claims and the retaliation claim is forfeited. Accordingly, we affirm the district court's grant of summary judgment.

A.

Under 42 U.S.C. § 1981, a plaintiff may bring suit when their right to make and enforce contracts is impaired by racial discrimination. Dr. Moini brought a § 1981 claim for disparate treatment, which requires him to identify evidence that the University intentionally discriminated against him on the basis of race. *See Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 n.1 (D.C. Cir. 2013) (per curiam).

A plaintiff can prove intentional discrimination through direct or indirect evidence. Direct evidence includes any statement that "itself shows racial . . . bias in the [employment] decision." *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011). Dr. Moini has not identified such a statement. Before the district court, he cited comments by Dr. Walter Rowe that allegedly denigrated immigrants and foreigners. Such general remarks, however, do not show "bias in the [employment] decision." *Id.*

Absent direct evidence, we assess indirect evidence of racial discrimination under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973); *see also Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (explaining that *McDonnell Douglas* applies to § 1981 claims). When an employer offers a legitimate, nondiscriminatory reason for an allegedly discriminatory employment action, we "need not — and should not — decide whether the plaintiff actually made out a prima facie case" of discrimination. *Brady v. Off. of Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis omitted). Instead, our task is to "resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race . . . ?" *Id.*

Here, the University provided a legitimate, nondiscriminatory reason for denying Dr. Moini tenure: his failure to demonstrate teaching excellence. During Dr. Moini's tenure process, multiple reviewers cited his below-average teaching-evaluation scores and his students' negative comments about him as the reason for denying tenure. The Chair of the College's tenure committee noted that Dr. Moini's "teaching record falls well below [w]hat we would expect from our tenured colleagues." J.A. 425. Dean Ben Vinson noted that student comments "complained of overwhelming material, lack of organization, poor pace, and quizzes that seemed more like tests." *Id.* at 428. In short, GW provided sufficient evidence to establish that there is no genuine dispute about whether Dr. Moini was denied tenure because he did not meet the University's teaching standards.

Dr. Moini attempts to show that GW's cited rationale was pretextual based on asserted deviations from the University's established procedures for evaluating tenure applications. But none of the alleged irregularities supports an inference of racial discrimination. *See Fischbach v.*

4

*D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("An employer's failure to follow its own regulations and procedures, alone, may not be sufficient to support the conclusion that its explanation for the challenged employment action is pretextual." (internal quotations omitted)).

First, Dr. Moini argues that the Department Chair, Dr. Rowe, deviated from established procedures for assigning courses and for readying a candidate to apply for tenure. Dr. Moini contends that Dr. Rowe set him up to fail by assigning him to teach a graduate seminar course with a history of low student evaluations. He also emphasizes that Dr. Rowe failed to provide him with a mid-tenure review and never informed him about the concerns with his teaching. Dr. Moini's accusations against Dr. Rowe are unpersuasive. Dr. Rowe strongly supported Dr. Moini's tenure application, urging the Faculty Senate to look past Dr. Moini's negative reviews and vouching that his teaching was "clear and concise." J.A. 442. The evidence therefore does not support an inference that Dr. Rowe harbored racial animus against Dr. Moini or sought to sabotage his application for tenure. Moreover, Dr. Moini has not shown that the University's consideration of student evaluations was a deviation from its usual practice when making tenure decisions. *See* J.A. 272 ("Evidence of effective teaching . . . shall include . . . written evaluation[s] by students."). Finally, the decision not to provide Dr. Moini with an official mid-tenure review was made by Dr. Victor Weedn, the preceding Department Chair, based on a representation by Associate Dean Eric Arnesen that such reviews were not necessary for fast-track faculty. Dr. Moini has made no allegations of racial discrimination against Dr. Weedn or Dean Arnesen.

Second, Dr. Moini alleges that non-Middle Eastern professors were treated differently in the tenure process, citing three professors from other departments who received tenure despite receiving teaching evaluations below their departmental averages. To establish that another employee is an appropriate comparator, "[a] plaintiff must . . . demonstrate that all of the relevant aspects of his employment situation were nearly identical to those of the other employee." *Burley v. Nat'l Passenger Rail Corp.*, 801 F.3d 290, 301 (D.C. Cir. 2015) (cleaned up). As the district court observed, the proposed comparators differed in the timing of their tenure decisions, the composition of their teaching loads, and the discernable upward trajectory in their student evaluations.[3]

B.

Section 1981's implied cause of action also encompasses retaliation claims. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 446 (2008). But Dr. Moini has forfeited any § 1981 retaliation claim he may have had by failing to raise it in his complaint. *See Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1039 (D.C. Cir. 2003) (declining to address the merits of an argument

---

[3] Dr. Moini argues that Dr. Rowe is another relevant comparator because he co-taught the Graduate Seminar and also received poor student evaluations. Despite these evaluations, Dr. Rowe was promoted to Department Chair. Dr. Rowe is an inappropriate comparator, however, because the criteria for selection of a Department Chair are fundamentally different from those for granting tenure. The role of the Chair is administrative in nature.

"raised for the first time on appeal"). In the complaint, Dr. Moini does not mention that he previously sued UT Austin for racial discrimination, much less argue that he was denied tenure at GW because of it. While we construe a pro se plaintiff's pleading more leniently than one drafted by lawyers, we cannot supply a cause of action that the plaintiff did not plead. *Bowman v. Iddon*, 848 F.3d 1034, 1040 (D.C. Cir. 2017) ("Even construing the complaint liberally, as we must, it contains nothing resembling the claim amicus asserts.").

Amicus argues that we can find a retaliation claim in Dr. Moini's complaint because it asked the court to "enjoin Defendant from any further acts of discrimination and/or *retaliation* against Plaintiff." J.A. 112 (emphasis added). But that single word is insufficient to plead a retaliation claim based on Dr. Moini's suit against UT Austin. The complaint, read as a whole, is clear: Dr. Moini sued GW for race discrimination, not retaliation due to a past lawsuit. Amicus also argues that Dr. Moini made a retaliation claim in his summary-judgment briefing. While it is true that Dr. Moini referenced events related to his UT Austin lawsuit in his Statement of Undisputed Facts, the district court was not required to infer new legal claims from such factual references. *See Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988).

C.

Finally, Dr. Moini's contract claims lack merit. Breach of contract claims are assessed under D.C. law and require: "(1) a valid contract . . . ; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. 2009). Dr. Moini presents six contract-based arguments on appeal — but none of them adequately raise a factual dispute about a breach of contract by the University.

First, Dr. Moini's claim about mid-tenure review is time-barred. A breach of contract action must be brought within three years of the time of breach. *Mawakana v. Bd. of Trustees of the Univ. of D.C.*, 926 F.3d 859, 868 (D.C. Cir. 2019). The College's procedures state that the review should occur "at the approximate mid-point of the period leading to [the] tenure review and decision." J.A. 155. The approximate mid-point of Dr. Moini's tenure track was around October 2015, more than three years prior to the filing of the complaint in October 2019. *Mawakana*, 926 F.3d at 868.

Next, Dr. Moini's contract claims based on Dr. Rowe's selection as Department Chair were not raised before the district court and are now forfeited. *See Kingman Park Civic Ass'n*, 348 F.3d at 1039. Although Dr. Moini discussed Dr. Rowe's selection as Department Chair as a comparator for his racial-discrimination claim, he did not allege that Dr. Rowe's selection as Department Chair constituted a breach of the Department Constitution.

The remainder of Dr. Moini's claims also are unavailing. Dr. Moini fails to create a genuine dispute about whether Dr. Rowe had any contractual obligation to inform him of the Department's initial negative tenure vote in December 2016. That vote was superseded by the Department's unanimous vote in favor of his tenure. Dr. Moini also fails to create a genuine

dispute about whether Provost Maltzman did not appropriately apply the "compelling reasons" standard when non-concurring with the Department or the Appeals Panel's decisions. In fact, Provost Maltzman specifically explained that the "compelling reasons" to deny tenure related to Dr. Moini's failure to demonstrate teaching excellence. J.A. 440, 628. Dr. Moini also alleges that Vice Provost Christopher Bracey and the Hearing Panel members engaged in inappropriate ex parte communications during the grievance process, but the referenced emails only discussed the privacy interests of academic reviewers. Those exchanges did not relate to the substance of the tenure review and did not violate the Faculty Code. J.A. 316 ("Members of the Hearing Committee . . . shall avoid ex parte communications bearing on the substance of the dispute."). Finally, Dr. Moini has failed to provide any evidence demonstrating that members of the GW administration colluded or conspired against him in their decision to deny tenure.

IV.

There is no genuine dispute of material fact about Dr. Moini's § 1981 discrimination claim or his contract claims. We therefore affirm the district court's order granting summary judgment to the University.

\* \* \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing *en banc*. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

FOR THE COURT:
Mark J. Langer, Clerk

BY: /s/
Daniel J. Reidy
Deputy Clerk

7