# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued September 10, 2019　　　Decided January 28, 2020

No. 18-7037

HENRY OVIEDO,
APPELLANT

v.

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-01883)

———

*Joseph Scarborough*, Student Counsel, argued the cause as *amicus curiae* in support of appellant. On the briefs were *Thomas Burch*, appointed by the court, and *David Boyer* and *Megan Cambre*, Student Counsel.

*Henry Oviedo*, *pro se*, filed the briefs for appellant.

*M. Richard Coel* argued the cause and filed the brief for appellee. *Michael K. Guss* and *Gerard J. Stief* entered appearances.

Before: ROGERS and WILKINS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WILKINS.

Opinion concurring in part and concurring in the judgment filed by *Circuit Judge* ROGERS.

Concurring Opinion filed by *Senior Circuit Judge* RANDOLPH.

WILKINS, *Circuit Judge*: In this Title VII and Age Discrimination in Employment Act ("ADEA") case, Henry Oviedo appeals the District Court's grant of summary judgment for his former employer, Washington Metropolitan Area Transit Authority ("WMATA"). Oviedo alleges that during his sixteen-year tenure, WMATA failed to promote him on the basis of age and national origin and later retaliated against him for complaining of such discrimination by continuing to deny him promotions. Because the record at summary judgment fails to support Oviedo's arguments on appeal, we affirm the judgment of the District Court on all claims.

## I.

Oviedo is a white male of Chilean national origin with a self-described "strong Hispanic accent." J.A. 8. According to his resume, attached to his amended complaint, Oviedo has twenty-five years of engineering experience, a bachelor's degree in electrical engineering (BSEE), a master's degree in electrical engineering (MSEE), and a master's degree in business administration (MBA). Prior to his employment with WMATA, Oviedo worked as a program manager for Siemens Transportation Partnership-Puerto Rico, Dallas Area Rapid Transit, and the Southeastern Pennsylvania Transportation Authority.

WMATA hired Oviedo in 1999 as a Project Manager. Oviedo began applying for promotions within WMATA around 2003, submitting numerous applications for various positions with no success. Beginning in 2007, Oviedo sent complaints to WMATA about his lack of promotions. Two years later, in 2009, Oviedo filed his first charge of discrimination with EEOC. Although EEOC issued Oviedo a right-to-sue letter in 2011, Oviedo did not file suit until 2016, which is the instant lawsuit.

The denied promotions continued along with several alleged demotions. In the fall of 2013, Oviedo applied for a different Project Manager position. Although WMATA's human resources passed his resume on for consideration, John Thomas, the sole decisionmaker and the Director of Office of Major Capital Projects, denied him an interview. Thomas wrote in a memorandum dated January 31, 2014, that he did not select Oviedo for an interview in Fall 2013 for the Project Manager position because he was looking for a candidate familiar with "WMATA's business policies, procedures and practices," and Oviedo's experience was "focused on the technical aspects of the electrical power systems for the operation of the rail system." J.A. 20. Rather, "[t]he Project Manager position requires more than just technical knowledge of WMATA but, as noted above, knowledge of the business aspects of WMATA's policies, procedures and practices." *Id.*

On January 8, 2014, Oviedo filed his second charge of discrimination with EEOC. In his 2014 EEOC charge, Oviedo alleges discrimination – based on his race (White), national origin (Chilean), and age (78) – and retaliation for prior complaints about discrimination. The 2014 EEOC charge states, "[o]n November 18, 2013, I was denied an interview for

the position of Project Manager. I believe I have more experience than most, if not all, of the persons who were selected for the positions." J.A. 93. Oviedo does not describe any other event in his 2014 EEOC charge. In 2015, Oviedo retired from WMATA at age 80.

After receiving his right-to-sue letter from EEOC on July 14, 2016, with respect to the 2014 charge, Oviedo filed a *pro se* complaint, and later a *pro se* amended complaint, against WMATA, alleging numerous violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, and ADEA, 29 U.S.C. §§ 621-34.

WMATA moved for summary judgment on all claims. Congruent with Federal Rule of Civil Procedure 56(c) ("Rule 56") and the District Court's Local Rule 7(h)(1),[1] WMATA submitted a "Statement of Material Facts Not in Dispute," containing seven facts, each followed by a citation to either Oviedo's amended complaint or materials that WMATA submitted with its motion for summary judgment. J.A. 61-63. Among those facts, WMATA stated:

> In the fall of 2013, Plaintiff applied for two Project Manager positions in another office. Plaintiff was not selected for either of these positions. The hiring manager, John Thomas, who like Plaintiff is a white male, determined that Plaintiff was not the best candidate for either job as his experience at WMATA, as

---

[1] "Each motion for summary judgment *shall* be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which *shall* include references to the parts of the record relied on to support the statement." LCvR 7(h)(1) (emphases added).

> demonstrated by his resume, concentrated primarily on electrical engineering design. By contrast, one of the two Project Manager position[s] being filled dealt with the installation of canopies over escalators, and the primary purpose of the second position was to serve as a financial manager for various office projects. (Thomas Affidavit, ¶[¶] 3-4).

J.A. 62-63.

A few days after WMATA filed its motion for summary judgment, the District Court issued an order advising Oviedo of the rules governing summary judgment procedure, including Rule 56 and Local Rule 7(h)(1). This type of order is commonly referred to as a *Fox v. Strickland* Order after our decision of the same name, 837 F.2d 507 (D.C. Cir. 1988) (per curiam), and it provides *pro se* litigants with a detailed explanation of the summary judgment process, including instructions on how to comply with Rule 56 and Local Rule 7(h) and the consequences of a failure to comply.

The District Court's Order specifically warned Oviedo that "[o]n a motion for summary judgment, 'any factual assertion in the movant's affidavits will be accepted as being true unless [the opposing party] submits his own affidavits or other documentary evidence contradicting the assertion.'" *Oviedo v. WMATA*, No. 16-cv-1883, dkt. 28, at 2 (Aug. 28, 2017) (alternation in original) (quoting *Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992)). In addition, the District Court quoted Rule 56(c)'s mandate:

(1) Supporting Factual Positions. A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

*Id.* The District Court advised Oviedo that Local Rule 7(h)(1) enables the District Court to assume a fact "identified by the moving party in its statement of material facts" as admitted unless the fact is controverted in the statement of genuine issues filed in opposition to the motion. *Id.* at 3. Driving the point home, the District Court warned that "mere statements that the moving party's affidavits are inaccurate or incorrect are not sufficient." *Id.*

Oviedo opposed the motion for summary judgment, but he did not file a separate statement disputing any facts asserted in WMATA's Statement of Material Facts Not in Dispute with any statement of genuine issues, as required by Local Rule 7(h)(1).[2]   But more importantly, Oviedo did not file any

---

[2] "An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement." LCvR 7(h)(1).

affidavits to support any factual assertions made in his opposition to the motion for summary judgment. In his response to the motion for summary judgment, Oviedo presented argument – without record evidence to support his statements – that Thomas "erroneously and arbitrarily decided" that Oviedo's qualifications were insufficient for the position, without disputing that the position was one focused on finance. J.A. 102. In the accompanying memorandum, Oviedo argued that he was more qualified for both Fall 2013 Project Manager positions than the selected candidates, Diana Levy and Steve Larkin, because Levy and Larkin's resumes show "very marginal" work experience "in comparison with the Job Posting Requirements *and* the WMATA Job Code 2854." J.A. 106 (emphasis added).

Oviedo attached to his memorandum in opposition, as relevant to this appeal: (1) a WMATA position description No. 2854 for a Project Manager position, dated September 17, 2010; (2) an applicant resume for Diana Levy; and (3) excerpts from Thomas's deposition. To be clear, Oviedo did not submit any evidence related to Steve Larkin (the candidate hired as canopy installation Project Manager), any evidence related to any other candidate that applied or interviewed for either of the Fall 2013 Project Manager positions, or any document purporting to be the "Job Posting Requirements" referenced in his memorandum. He attached the Project Manager position description entitled "WMATA Job Code 2854" dated 2010, but there was no declaration or testimony showing what relevance that document had to the 2013 vacancies at issue.

In granting summary judgment for WMATA on all Oviedo's claims, the District Court concluded that Oviedo's ADEA claims were barred by sovereign immunity, all Title VII claims except those arising from the Fall 2013 decision were

not timely exhausted or not timely filed, and Oviedo failed to show that WMATA's proffered reasons for the Fall 2013 decision were pretextual, dooming those claims under the final step of the three-step framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Oviedo appeals all of these decisions. We appointed *amicus curiae* to present arguments in support of his appeal.

## II.

The Court reviews a district court's grant of summary judgment under the familiar *de novo* standard, viewing "the evidence in the light most favorable to the nonmoving party" and drawing all reasonable inferences in his or her favor. *Minter v. District of Columbia*, 809 F.3d 66, 68 (D.C. Cir. 2015) (quoting *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002)). Rule 56(a) requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Relevant here, "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

## III.

Oviedo argues that the District Court erred at every turn. We disagree, concluding that the District Court properly

granted summary judgment on all Oviedo's ADEA and Title VII claims.[3]

**A.**

Oviedo challenges the District Court's conclusion that WMATA enjoys sovereign immunity from Oviedo's ADEA claims. Following *Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000), in which the Supreme Court held that the ADEA did not abrogate States' Eleventh Amendment immunity, we have held that because WMATA enjoys the same immunity from suit as its State signatories, WMATA is immune from ADEA liability. *Jones v. WMATA*, 205 F.3d 428, 431-32 (D.C. Cir. 2000). *Jones* also explicitly forecloses Oviedo's primary argument on appeal that WMATA waived its immunity because its discriminatory acts in its promotion and demotion decisions fall outside the scope of "governmental functions" to

---

[3] In their opening briefs on appeal, Oviedo and *amicus* insert references to evidence that was not before the District Court on the motion for summary judgment, a tactic to which WMATA objects. WMATA is correct that this Court may only consider the record as it was before the District Court when reviewing the District Court's decision. *See Goland v. CIA*, 607 F.2d 339, 371 (D.C. Cir. 1978). Although this Court has sometimes made exceptions to this rule, Oviedo and *amicus* fail to provide a basis for us to apply any of those rarely used exceptions here. *See, e.g.*, *Johnson v. Greater Se. Cmty. Hosp. Corp.*, 951 F.2d 1268, 1273 (D.C. Cir. 1991) (applying exception for ripeness issue); *Powell v. U.S. Bureau of Prisons,* 927 F.2d 1239, 1243 (D.C. Cir. 1991) (remanding for consideration of new evidence in light of "unusual circumstances" and equities of case). We therefore disregard the documents added to the Joint Appendix that were not presented to the District Court, i.e., J.A. 215-71.

which immunity applies.[4] Appellant's Opening Br. 19. "WMATA's 'governmental function' immunity encompasses 'the hiring, training, and supervision of WMATA personnel.'" *Jones*, 205 F.3d at 432 (quoting *Burkhart v. WMATA*, 112 F.3d 1207, 1217 (D.C. Cir. 1997)); *see also Beebe v. WMATA*, 129 F.3d 1283, 1287-88 (D.C. Cir. 1997) (While employment decisions "are not quintessential government functions," they are "discretionary in nature, and thus immune from judicial review." (citation and internal quotation marks omitted)). Nor can this Court "waive the WMATA immunity" on the basis that WMATA's decisionmaker intentionally violated the ADEA. Appellant's Opening Br. 19. It is the state actor – not the court – that must consent to suit, and such waiver must be "unequivocally expressed." *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)).

**B.**

Next, Oviedo invokes various equitable doctrines to resurrect his Title VII claims that the District Court concluded were either not exhausted or untimely filed, but these arguments fail.

"Before suing under . . . Title VII, an aggrieved party must exhaust his administrative remedies by filing a charge of discrimination with the EEOC within 180 days of the alleged

---

[4] Section 80 of the WMATA Compact provides, in pertinent part, that WMATA "shall be liable for its contracts and for its torts . . . but shall not be liable for any torts occurring in the performance of a governmental function." *Morris v. WMATA*, 781 F.2d 218, 220 (D.C. Cir. 1986) (quoting WMATA Compact, Pub.L. No. 89–774, 80 Stat. 1324 (1966)).

discriminatory incident." *Washington v. WMATA*, 160 F.3d 750, 752 (D.C. Cir. 1998). Many of the denied promotion and demotion claims in Oviedo's amended complaint never made their way into either the 2009 EEOC charge or the 2014 EEOC charge. Oviedo seeks to be excused from timely exhausting these claims, arguing that he was denied promotion so often that the exhaustion requirement became too "extraordinar[ily] technical." Appellant's Opening Br. 21-22.

"[E]quitable tolling allows a plaintiff to avoid the bar of the limitations period if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim[.]" *Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998) (citing *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 579 (D.C. Cir. 1998)). However, "[t]he court's equitable power to toll the statute of limitations will be exercised only in extraordinary and carefully circumscribed instances." *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988). Other than navigating Title VII's exhaustion process *pro se*, the record does not demonstrate that Oviedo faced any hurdles in exercising his rights under Title VII to warrant equitable tolling. As the District Court correctly noted, equitable tolling "does 'not extend to what is at best a garden variety claim of excusable neglect.'" J.A. 204 n.1 (quoting *Irwin v. Dep't of Veteran's Affairs*, 498 U.S. 89, 96 (1990)). Summary judgment was properly granted to WMATA on all claims not timely brought in either the 2009 or 2014 EEOC charges.[5]

---

[5] Oviedo's reliance on *Miller v. Hersman*, 594 F.3d 8, 11 (D.C. Cir. 2010), to toll the deadline to consult with EEOC also fails. *Miller* addressed only tolling the time to file a charge before EEOC; it does not apply to claims that were never brought before EEOC.

After an employee files a charge with EEOC and receives notice of final agency action, the employee must file suit within ninety (90) days. 42 U.S.C. § 2000e-5(f)(1). Oviedo received notice of final agency action after his 2009 EEOC charge via a right-to-sue letter dated March 15, 2011. Thus, he needed to file suit well before this lawsuit commenced on September 20, 2016. Oviedo argues equitable estoppel should excuse this delay because WMATA "advised" Oviedo not to file a lawsuit until it finished investigating his failure-to-promote claim. Appellant's Opening Br. 21. "'Equitable estoppel' precludes a defendant, because of his own inequitable conduct – such as promising not to raise the statute of limitations defense – from invoking the statute of limitations." *Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 278 (D.C. Cir. 2003) (citations omitted). Unfortunately for Oviedo, he failed to put forth any record evidence to support this assertion.

We therefore affirm the grant of summary judgment on all Title VII claims not exhausted via the 2014 Charge of Discrimination. To those exhausted claims we now turn.

## C.

The only Title VII claims arising out of the 2014 EEOC charge are claims of retaliation and national-origin discrimination in the Fall 2013 Project Manager decision.[6] Title VII claims may be proven by direct or circumstantial evidence, but Oviedo presents neither.

---

[6] Oviedo does not pursue a claim based on race.

13

**1.**

Direct evidence – sufficient on its own to entitle a plaintiff to a jury trial – usually takes the form of a "statement that itself shows . . . bias [against a protected class] in the [employment] decision." *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 576 (D.C. Cir. 2013) (per curiam) (second alteration in original) (quoting *Vatel v. All. of Auto. Mfrs.*, 627 F.3d 1245, 1247 (D.C. Cir. 2011)). As direct evidence of Title VII discrimination, Oviedo identifies WMATA Construction Manager A. Kolodne, who "criticized [Oviedo] very hard" for his Spanish accent during a work meeting. Appellant's Opening Br. 15. The only record evidence of this alleged remark is in a letter from Oviedo to Janne Weissman, Director of Human Resources for WMATA, dated September 11, 2009, in which Oviedo references that in 2006, Kolodne told Oviedo that "I didn't understand anything you just said," in reference to Oviedo's language skills. J.A. 130, 132-33. In his brief on appeal, Oviedo states that the comment by Kolodne occurred "around 2012," Appellant's Opening Br. 23, but he provides no citations to the record to support a statement occurring in 2012. Furthermore, Oviedo offers no evidence that Thomas, the decisionmaker, shared Kolodne's sentiments. As a result, Kolodne's statement does not constitute either direct or indirect evidence of discrimination.

**2.**

Because Oviedo presents no direct evidence of discrimination or retaliation, he must rely on indirect evidence, using the three-step framework for such claims set forth in *McDonnell Douglas*, 411 U.S. 792. *See Iyoha v. Architect of the Capitol*, 927 F.3d 561, 574 (D.C. Cir. 2019). Where there has been an adverse employment action and the employer

asserts a legitimate, non-discriminatory and non-retaliatory reason for the decision, we focus on pretext. *Brady v. Office of the Sergeant at Arms*, 520 F.3d 490, 494 (D.C. Cir. 2008); *see also Jones v. Bernanke*, 557 F.3d 670, 678 (D.C. Cir. 2009) (Title VII retaliation claims follow the same principles as Title VII discrimination). Therefore, we "conduct one 'central inquiry' in deciding an employer's motion for summary judgment: 'whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory [and non-retaliatory] reason was not the actual reason and that the employer intentionally discriminated [or retaliated] against the plaintiff on a prohibited basis.'" *Iyoha*, 927 F.3d at 566 (quoting *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008)).

A plaintiff need not present evidence "over and above rebutting the employer's stated explanation in order to avoid summary judgment," *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1290 (D.C. Cir. 1998) (en banc), but he must present evidence from which a reasonable jury "could reject the employer's proffered explanation," *id.* at 1292 (citation omitted). "In an appropriate case, '[t]he factfinder's disbelief of the reasons put forward by the defendant' will allow it to infer intentional discrimination." *Id.* at 1294 (alteration in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). But a plaintiff will not survive summary judgment "where 'the plaintiff created only a weak issue of fact as to whether the employer's reason [for the termination] was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination [has] occurred.'" *Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 13 (D.C. Cir. 2015) (alterations in original) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

Oviedo argues that the record evidence shows that Thomas hired candidates less qualified than he for the two Fall 2013 Project Manager positions and that Thomas shifted his explanations for his hiring decisions after the hiring to make his selected candidates appear more qualified. However, the lack of evidence put into the record foredooms both of Oviedo's arguments.

**i.**

We begin with Oviedo's qualification-comparison argument.

> If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate – something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.

*Aka*, 156 F.3d at 1294. Of course, imbedded in this type of attack is the assumption that the plaintiff must present the court with the competing qualifications and some sort of "position specification" from which the Court may conduct such a comparison for the particular position. *See id.* at 1295.

As explained above, Thomas selected two Project Managers, one of whom – Steve Larkin – was selected to focus on canopy installation. Oviedo argues he was more qualified for both positions, but as explained *supra*, he only introduced evidence of Levy's qualifications, preventing the District Court

and this Court from comparing Oviedo's qualifications to those of Larkin. While a reasonable person could conclude that Oviedo knew how to install canopies, that is not the test. *Aka*, 156 F.3d at 1294 (asking whether "a factfinder can conclude that a reasonable employer would have found the plaintiff to be *significantly better qualified* for the job" (emphasis added)). Without any evidence as to Larkin's qualifications, no reasonable factfinder could find that Oviedo was "significantly better qualified" than Larkin. *Id.*

A similar problem arises with respect to the other challenged non-promotion. Oviedo failed to dispute WMATA's statement about the relevant job specifications with identified materials in the record, as is required by Rule 56(c). The District Court treated WMATA's statement about the finance-focused specifications of the position as undisputed. Although – much to our concurring colleague's frustration – the District Court did not cite to its obvious authority to deem the statement as undisputed under Rule 56(e)(2) or Local Rule 7(h), the opinion did not address any other "job posting requirement" or "WMATA Job Code 2854." The opinion's silence on any purported material dispute of fact related to the job requirements – as surely competing job specifications would be – satisfies us that the District Court concluded that Oviedo failed to present a material dispute of fact on the matter. We find no error in the conclusion to treat WMATA's statement of the job description as undisputed, as it is a faithful application of the Federal Rules of Civil Procedure.

At this juncture, a brief review of the interplay among the various provisions in Rule 56 is necessary. Rule 56(c)(1) requires that "[a] party asserting that a fact cannot be or is genuinely disputed *must* support the assertion" using specific materials enumerated in Rule 56(c)(1)(A). FED. R. CIV. P.

56(c)(1) (emphasis added). The form in which a party must provide the "required support" is dictated by local rules. FED. R. CIV. P. 56(c) advisory committee's notes to 2010 amendment. While the local rules provide the mechanics, the Federal Rules of Civil Procedure explicitly require a party opposing summary judgment to support an assertion that a fact is genuinely disputed with materials in the record. FED. R. CIV. P. 56(c); *see Greene v. Dalton*, 164 F.3d 671, 674 (D.C. Cir. 1999) ("Accepting [ ] conclusory allegations as true [ ] would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial.") Under Rule 56(a), the District Court "*shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).[7]

On appeal, Oviedo and *amicus* rely heavily on the premise that WMATA Job Code 2854 was *the* operative job specification for the position ultimately filled by Levy, but this is nothing more than an unsupported allegation. The District Court correctly concluded that Oviedo failed to produce any testimony or documentation from which a reasonable jury could find in his favor on these remaining claims, and his failure to dispute WMATA's Statement in his own opposition

---

[7] The use of the word "shall" was restored to Rule 56(a) in the 2010 amendments to reinforce the case law that a court has no discretion to deny summary judgment where the movant has met its burden under the rule and the opposing party has failed to sufficiently show "the existence of an element essential to [its] case." FED. R. CIV. P. 56(a), advisory committee's notes to 2010 amendment (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

before the District Court precludes him from attempting to create a material factual dispute on appeal.

Crucially, Oviedo never submitted a declaration or affidavit stating that Job Code 2854 was the same job description to which he applied in Fall 2013. Oviedo did not submit any deposition testimony – either his own or from any other deponent – supporting the contention that Job Code 2854 was the operative posting for either of the two Fall 2013 Project Manager positions. When Oviedo confronted Thomas with No. 2854 during Thomas's deposition, Thomas could not remember what job code corresponded to the Fall 2013 Project Manager position, and of course, "questions are not evidence[.]" *United States v. Watson*, 171 F.3d 695, 697 (D.C. Cir. 1999).

The District Court properly treated Thomas's description of the Project Manager positions as undisputed, and we rightly do the same. While we liberally construe *pro se* pleadings, *pro se* litigants do not have a "license" to "ignore the Federal Rules of Civil Procedure." *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993) (citation and internal quotation marks omitted). Oviedo's failure to provide support in the record for his memorandum's allegations of the job specifications barred him from disputing WMATA's description of the job specifications. FED. R. CIV. P. 56(c), (e); *see Waterhouse v. District of Columbia*, 298 F.3d 989, 992 (D.C. Cir. 2002) ("[L]ike the district court, we treat as admitted all facts not controverted in [the plaintiff's] Verified Statement.").

The concurrence suggests that the proper course of action following a party's failure to properly support an assertion of fact is to "give Oviedo the opportunity to correct the

deficiency, or at least explain why he is not eligible for such consideration[.]" Concurring Op. 2 (citing FED. R. CIV. P. 56(e) and LCvR 7(h)(1)). Of course, Oviedo did receive notice – exclusively written for *pro se* litigants – explaining that an opposing party must dispute the moving party's factual allegations with "his own affidavits or other documentary evidence contradicting the assertion." *Oviedo*, No. 16-cv-1883, dkt. 28, at 2 (citation and internal quotation marks omitted). It may have helped Oviedo better understand the decision below had the District Court explicitly stated in its opinion why Job Code 2854 alone – unaccompanied by any record evidence connecting it to the positions at issue in the case – was insufficient to challenge WMATA's supported assertions about the applicable position descriptions. However, the District Court was under no obligation to do so, and it acted perfectly within its authority to "consider [a] fact undisputed for purposes of the motion" without giving Oviedo a second warning. FED. R. CIV. P. 56(e)(2).

With the issue of job specifications resolved, we swiftly reject Oviedo and *amicus*'s primary argument on appeal that the District Court erred by not conducting a qualifications comparison as instructed in *Aka* between Levy and Oviedo. In light of the undisputed fact that Thomas was seeking a "financial manager for various projects," no reasonable jury could conclude that Oviedo was "significantly better qualified for the job." *Aka,* 156 F.3d at 1294. Oviedo has a BSEE, MSEE, and MBA. Levy had a bachelor's degree in international economic relations, an MBA, and a master's degree in project management. From an educational standpoint, Oviedo was not "*significantly* better qualified" than Levy. *See Aka*, 156 F.3d at 1294 (emphasis added). Levy's "professional profile summary" indicates "over 9 years of progressively responsible experience in the areas of

transportation energy construction and project finance," with experience in cost estimation, budgeting, and staff management. J.A. 141. Oviedo's resume summary states that he has "more than 25 years of engineering experience in the rail transit industry. . . . includ[ing] developing, executing, and commissioning major construction for heavy and light rail projects." J.A. 23.[8] Although Oviedo possessed a great deal of experience with WMATA, no reasonable jury could say – based on the record as it was before the District Court – that Oviedo's tenure at WMATA in various engineering capacities rendered him "significantly better qualified" than Levy for a finance-focused Project Manager position, *Aka*, 156 F.3d at 1294.

**ii.**

This leaves only Oviedo's argument that a reasonable jury could infer discrimination because WMATA's explanations as to why Oviedo was not selected shifted over time, but this too is unsupported by the record.[9] In the January 31, 2014, memorandum, Thomas indicated that he did not select Oviedo for an interview because Oviedo's experience was "too narrowly focused," as the position necessitated "knowledge of the business aspects of WMATA's policies, procedures, and practices." J.A. 20. In its Statement of Material Facts Not in Dispute, WMATA stated that Oviedo's WMATA experience "concentrated primarily on electrical engineering design," in

---

[8] Unfortunately, due to the poor quality of the copy, the remaining content of Levy's resume is mostly indecipherable, so our comparison analysis can go no further. *See* J.A. 141-43.

[9] *Amicus*'s argument for shifting explanations relies on evidence that was not put before the District Court at summary judgment. *See supra* note 3.

"contrast" to canopy installation and financial management. J.A. 63. Thomas's declaration stated that he felt Oviedo "concentrated primarily on electrical engineering design, which was not the focus of either of the two positions in issue." J.A. 66. Thomas gave the same sort of testimony in his deposition, testifying that he viewed Oviedo's experience in electrical engineering as "a very narrow focus of experience at [WMATA]," J.A. 70, and that Oviedo lacked "breadth of the experience," *see* J.A. 71.

"[S]hifting and inconsistent justifications are 'probative of pretext.'" *Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011) (quoting *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 853 (4th Cir. 2001)). But we fail to see how these explanations are sufficiently inconsistent as to be "probative of pretext" absent any other pretext evidence. *Id.* In *Geleta*, where we "th[ought] a reasonable jury could find that the [employer's] proffered reasons [were] a pretext," there were three completely different reasons offered – first, offering no reason at all; second, claiming the program to which the plaintiff directed was being dismantled; and third, stating a desire to "realign[]" plaintiff's program. *Id.* (alteration in original). On top of that, we also noted that a reasonable jury could conclude one of those reasons was "itself not credible." *Id.* at 414. Here, all three of WMATA and Thomas's explanations sing the same tune: that Oviedo's skills and expertise in electrical engineering did not align with the skills sought for either of the Project Manager positions. Although Thomas's explanation in 2014 fails to explicitly reference canopy installation and financial management and it does not explain that Thomas actually hired two candidates, it is neither inconsistent nor shifting. We need not decide whether such evidence combined with other evidence of pretext would be sufficient to survive summary

judgment because there is no other pretext evidence in the record. This evidence alone is not enough.

To sum up, Oviedo failed to present evidence from which a reasonable jury could conclude that WMATA's non-discriminatory and non-retaliatory rationale for denying Oviedo promotion in Fall 2013 was pretext for discrimination or retaliation.[10]

## IV.

For the foregoing reasons, the judgment of the District Court is affirmed.

*So ordered.*

---

[10] Because Oviedo's discrimination and retaliation claims are both analyzed under the same inquiry, they fail for the same reasons. *Allen v. Johnson*, 795 F.3d 34, 40 (D.C. Cir. 2015) (Title VII retaliation and discrimination claims use the same burden-shifting framework and typically rely on the same types of circumstantial evidence to show pretext.). At any rate, the only evidence on which Oviedo conceivably relies to show retaliation is temporal proximity between the last alleged protected activity – filing his 2009 EEOC charge – and the denied promotion in Fall 2013. While there is no bright-line time limit for temporal proximity, an interval of several years – without other evidence – fails in this circumstance. *See Hamilton v. Geithner*, 666 F.3d 1344, 1357-58 (D.C. Cir. 2012) (discussing temporal proximity).

ROGERS, *Circuit Judge*, concurring in part and concurring in the judgment: Although I agree that summary judgment in favor of WMATA was appropriate, *see Oviedo v. WMATA*, 299 F. Supp. 3d 50, 59–63 (D.D.C. 2018), I write separately because the majority needlessly resolves Oviedo's appeal on a ground not raised by any party nor mentioned by the district court. In doing so, the majority exalts form over substance, creating a new defense that has never been raised by the parties. Federal Rule of Civil Procedure 56(a), however, requires the party moving for summary judgment to identify all defenses.

The majority, *sua sponte*, has invoked district court Civil Local Rule 7(h) to ignore material facts and supporting evidence that Oviedo proffered in his opposition to WMATA's motion for summary judgment. That rule permits — but does not require — district courts to assume that facts identified in the moving party's statement of material facts are admitted unless those facts are controverted in the non-moving party's "separate" statement of genuine issues. *See* LCvR7(h)(1). Accordingly, "[t]his circuit has long upheld strict compliance with the district court's local rules on summary judgment *when invoked by the district court*." *Burke v. Gould*, 286 F.3d 513, 517–20 (D.C. Cir. 2002) (emphasis added); *see also Arrington v. United States*, 473 F.3d 329, 335 (D.C. Cir. 2006). This approach is reflected in *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 150–54 (D.C. Cir. 1996).

The majority faults Oviedo for "his failure to dispute" WMATA's Statement of Facts describing the job specifications for the positions for which Oviedo did not receive an interview for what he claims were discriminatory reasons. Op. 17–18. Proceeding *pro se*, Oviedo included in his opposition to WMATA's motion for summary judgment a concise, numbered list of facts that he sought to prove at trial, Opp'n to Summ. J. 5–6, and a factual background section with ample record citations, Factual Background, Opp'n to Summ.

J. 7–20. Included in the factual background section was Oviedo's contention that the selected project managers had "very marginal" work experience compared to the "Job Posting Requirements and the WMATA Job Code 2854," a copy of which he attached to his opposition. Although Oviedo did not put those contentions in a *separate* statement, *see* LCvR7(h)(1), WMATA and the district court seemingly proceeded as if he had. Alas, unbeknownst to Oviedo until announced two years later at oral argument before this court, his list of disputed facts and supporting evidence are unworthy of consideration because they were in the same document as his arguments, thus violating the local rule. *See* Op. at 18. This conclusion — which surely must have come as a surprise to WMATA as well as Oviedo — was both unfair and unnecessary for affirmance.

The majority acknowledges the court's obligation to liberally construe documents filed *pro se* and to draw all reasonable inferences in the favor of the party opposing summary judgment. *See* Op. at 8. But it fails to explain why it decided on its own accord, without warning, to strictly enforce the federal and local summary judgment rules against this *pro se* plaintiff. WMATA never invoked the local rule in moving for summary judgment. Nor did the district court alert Oviedo that his statement of facts was deficient because it was not in a separate document or give any indication that the local rule played any part in its decision. In short, Oviedo never received notice of this apparently pivotal formatting defect. The court ought to give Oviedo the opportunity to correct the deficiency, or at least explain why he is not eligible for such consideration, as is any attorney, rather than belatedly exercise the discretion afforded to the district court. Federal Rule of Civil Procedure 56(e) contemplates that even attorneys can be afforded a second chance to perfect factual statements.

Furthermore, contrary to the majority's characterization, Oviedo's contention that Job Code 2854 was the operative position description was not an "unsupported allegation." Op. at 17. WMATA may never have *expressly* admitted that this is the job description for the positions for which Oviedo applied, but neither has WMATA at any time disavowed that it was the job posting, including when given the opportunity at oral argument before this court, *see* Oral Arg. Rec. 25:58–27:01 (Sept. 10, 2019). Thus, in the district court, Oviedo had no reason to offer additional verification and WMATA had ample notice that Oviedo intended to rely on this job description. Consequently, the court is obligated to draw the inference in Oviedo's favor that the job description he has consistently referred to, and provided as an attachment in opposing summary judgment, and WMATA has never objected to, is the operative one. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

By importing the local rule's grant of discretion to the district court to exclude this evidence at this late stage of the proceedings because of a formatting error, the majority unfairly hands WMATA a new defense at the expense of an unwitting *pro se* plaintiff. Therefore, I do not join the majority's reasoning in affirming the grant of summary judgment to WMATA and consider it unnecessary inasmuch as the district court correctly found that Oviedo had failed to produce any evidence to support his only preserved claim of national origin discrimination. *See Oviedo*, 299 F. Supp. 3d at 59–63.

RANDOLPH, *Senior Circuit Judge*, concurring: I join all of the court's opinion, including especially its discussion of Local Civil Rule 7(h). *See Burke v. Gould*, 286 F. 3d 513, 523 (D.C. Cir. 2002) (Randolph, J., dissenting in part and discussing former Local Civil Rule 56.1, the language of which is now contained in Rule 7(h)).