# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 19-5188**

**September Term, 2020**

FILED ON: November 10, 2020

VIRNA L. SANTOS,

        APPELLANT

v.

WILLIAM PELHAM BARR,

        APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:17-cv-00321)

---

Before: GARLAND and PILLARD, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

## J U D G M E N T

This case was considered on the record from the United States District Court for the District of Columbia and the briefs of the parties. The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons set forth in the attached memorandum, it is

**ORDERED AND ADJUDGED** that the decision of the District Court be affirmed.

Pursuant to Rule 36 of this Court, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after the disposition of any timely petition for rehearing or petition for rehearing *en banc*. *See* Fed R. App. P. 41(b); D.C. Cir. R. 41.

**Per Curiam**

        **FOR THE COURT:**
        Mark J. Langer, Clerk

BY:    /s/
        Daniel J. Reidy
        Deputy Clerk

**MEMORANDUM**

Virna Santos sued her former employer, the Department of Justice, under Title VII of the 1964 Civil Rights Act. Title VII provides a cause of action for employees who prove that they suffered adverse employment actions in retaliation for activity protected by Title VII. *See* 42 U.S.C. §§ 2000e-3(a), 2000e-5(f).

Santos alleges the Department retaliated against her after she reported a male colleague for harassing female subordinates, and a year later, reported another male colleague for touching her lower back where it meets her buttocks. She claims she suffered two adverse employment actions as a result of those reports: First, sixteen months after her first report and four months after her second report, the Department transferred Santos from her previous role within the Office of Overseas Prosecutorial Development, Assistance, and Training to be the Regional Director for the Judicial Studies Institute, a new rule-of-law initiative developed in collaboration with Justice Sotomayor. Although Santos kept her same grade, pay, and benefits, she would oversee a smaller staff with a narrower portfolio and a smaller budget. Second, although the Department renewed Santos's contract and gave her positive evaluations after her reports, when Santos's contract expired nine months after the reassignment, the Department terminated her employment.

The Department offers nonretaliatory explanations for both employment actions. The Department explains that the reassignment reflected Santos's experience developing the Judicial Studies Institute and recognized her as the best candidate to lead the high-profile program to

continued success. Further, the Department says that Santos was terminated because the State Department, the sole funder of the Judicial Studies Institute, stopped financing her position.

Once a Title VII defendant "asserts a legitimate, nondiscriminatory reason for an adverse employment action," the plaintiff must "produce[] sufficient evidence for a reasonable jury to find that the employer's asserted nondiscriminatory reason was not the actual reason" for the action. *Adeyemi v. District of Columbia*, 525 F.3d 1222, 1226 (D.C. Cir. 2008).

Here, Santos makes three attempts to disprove the Justice Department's nonretaliatory explanations for her reassignment and transfer. First, she argues that the Department could have independently funded her position and that the Department didn't fire any other regional director for lack of funds. Second, she cites a comment that a former supervisor made seven months after her first report about "drama" in Santos's office "expos[ing]" her supervisors to Justice Department leadership. 1 App. 321; 2 App. 695, 711. Santos perceived the comment as chiding her for pressing her first report within the Department. Third, she draws a retaliatory inference from the fact that her reassignment and termination happened after both reports.

Even viewing the record in the light most favorable to Santos, the District Court concluded that Santos produced no evidence capable of disproving the Department's nonretaliatory explanations. Because the District Court saw no other factual issue that could allow a reasonable jury to return a verdict for Santos, the District Court held that the Department was entitled to judgment as a matter of law. So it granted the Department's motion for summary judgment. *See* No. 17-321, 2019 WL 2504101, *8 (D.D.C. June 17, 2019).

Reviewing that conclusion de novo, *see* 28 U.S.C. § 1291; *Evans v. Fed. Bureau of Prisons*, 951 F.3d 578, 584 (D.C. Cir. 2020), we affirm. Simply put, no reasonable jury could find that Santos suffered an adverse employment action in retaliation for protected activity.

For starters, Santos's general averments that the Justice Department could have independently funded her position or that the Justice Department didn't fire any other regional director for lack of funds are insufficient to rebut the Department's abundant evidence that the transfer and termination were each based on legitimate, nonretaliatory reasons. *See Oviedo v. Wash. Metro. Area Transit Auth.*, 948 F.3d 386, 395 (D.C. Cir. 2020).

Nor can the former supervisor's comment about "drama" in Santos's office support a finding that retaliation caused her reassignment or termination, a fact Santos must prove to prevail. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013). After all, Santos's supervisors subsequently gave her positive evaluations and repeatedly renewed her appointment. Further, the person who made the comment left the Department shortly thereafter; he wasn't around when the Department reassigned and terminated Santos.

That leaves Santos with the bare fact that her reassignment and termination followed her reports. Yet in context, the sequence supports the Department, not Santos. Considerable time passed after Santos's reports until her reassignment and termination: the reassignment happened sixteen months after her first report and four months after her second; the termination happened twenty-five months after her first report and thirteen months after her second. Additionally, the Department renewed Santos's position three times following her second report: twice for three-month intervals, and once for one year. Absent other evidence of retaliation, the passage of time and intervening

4

renewals bar any retaliatory inference. *See Solomon v. Vilsack*, 763 F.3d 1, 16 (D.C. Cir. 2014) (requiring "'positive evidence beyond mere [temporal] proximity' . . . to create a genuine issue of material fact concerning whether" an employer's nonretaliatory reason for an employment action was pretextual (quoting *Woodruff v. Peters*, 482 F.3d 521, 530 (D.C. Cir. 2007))).

\* \* \*

Two final points. First, because we conclude that Santos failed to offer evidence capable of disproving the Department's nonretaliatory explanations for her reassignment and termination, we need not decide whether the reassignment and termination constituted adverse employment actions for Title VII purposes or whether Santos's reports constituted protected activity under Title VII.

Second, Santos separately alleges that her supervisors subjected her to a hostile work environment and urges us to reverse the District Court on that basis. To be sure, a hostile work environment can sometimes constitute actionable discrimination under Title VII. *See Hussain v. Nicholson*, 435 F.3d 359, 366 (D.C. Cir. 2006). But Santos neither squarely raised nor pressed that claim before the District Court, so we need not consider it. *See United States v. Alaw*, 327 F.3d 1217, 1220 (D.C. Cir. 2003). And even if we did, her allegations are neither severe nor pervasive enough to invoke Title VII's protections. *See Baird v. Gotbaum*, 792 F.3d 166, 171-72 (D.C. Cir. 2015).