# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 25-5352**                                              **September Term, 2025**

FILED ON: JUNE 8, 2026

UNITED STATES OF AMERICA,
                    APPELLEE

v.

JAMES T. ABBOTT,
                    APPELLANT

---

On Appeal from the United States
District Court for the District of Columbia
(1:23-cv-01555)

---

Before: RAO, PAN and GARCIA, *Circuit Judges*.

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs of the parties. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The court has afforded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is:

**ORDERED** and **ADJUDGED** that the order of the district court issued on September 15, 2025, granting the appellee's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56, be **AFFIRMED**.

*          *          *

Appellant James T. Abbott, a former Member of the Federal Labor Relations Authority (FLRA), failed to timely file a mandatory financial disclosure and termination report upon leaving government service. Despite receiving repeated reminders from agency officials and two filing extensions, he did not submit the report until nine months after the final deadline — and he did so on the same day that the government filed suit against him to secure a civil penalty. The district

court entered summary judgment in favor of the government and imposed a civil penalty of $40,000 plus a $200 late-filing fee. We affirm.

**I.**

Under the Ethics in Government Act (EIGA), a covered federal employee must file annual financial disclosure reports and, upon leaving government service, a termination report. 5 U.S.C. § 13103(d), (e), (f)(3). Abbott was subject to those requirements as a Member of the FLRA from December 2017 until May 17, 2022. Moreover, Abbott had timely filed EIGA disclosures every year since at least 1990 while holding other government offices, and had held some positions with significant responsibility for administering the EIGA.

As relevant here, Abbott was obligated to file (1) an annual report for 2021 by May 15, 2022, and (2) a termination report within thirty days of his May 17 separation — *i.e.*, by June 16, 2022. *See* 5 U.S.C. § 13103(d)–(e). On May 16, the day after the annual report was due, FLRA ethics official Rebecca Osborne emailed Abbott to ask whether he needed a forty-five-day extension. Abbott did not respond. Three days later, after Abbott's separation, Osborne followed up by email. She told him that he could file a combined annual and termination report, that she was granting him a forty-five-day extension, and that the extended deadline was June 30. Abbott again did not respond.

Ahead of the June 30 deadline, Osborne followed up again (via email and voicemail). Abbott responded by email on June 29, asking whether he owed "1 or 2 reports." J.A. 43. Osborne replied eight minutes later, confirming that only one report was needed; she also granted him a further forty-five-day extension to August 14 and cautioned that it was "the outer-limit of extensions" that the FLRA could give. J.A. 42; *see also* 5 U.S.C. § 13103(g)(1). She sent another follow-up email on July 28 but received no response. August 14 came and went without further word from Abbott. Over the next few months, FLRA officials repeatedly attempted to contact Abbott by email and certified mail, to no avail.

On November 25, 2022, Osborne emailed Abbott to warn him that if he did not respond within a week, the matter would be referred to the Department of Justice (DOJ) for enforcement. Abbott replied nineteen minutes later, stating that he "will be doing it" (*i.e.*, filing the report). J.A. 58. But he did not do it.

In January 2023, the Office of Government Ethics (OGE) sent the FLRA a letter about Abbott's noncompliance. Osborne forwarded the letter to Abbott on January 30, again warning of a DOJ referral. Abbott did not respond. The FLRA referred the matter to the DOJ on March 22, 2023. The DOJ notified Abbott by certified mail on April 28 that it intended to file suit "on or about May 30," and offered him until May 12 to initiate attempts to resolve the matter without litigation. J.A. 72. Abbott did not respond.

On May 31, 2023 — nine months after the final deadline for Abbott's report — the DOJ filed its complaint in the district court. Abbott filed his combined report on the same day, allegedly without knowledge of the DOJ's lawsuit. Abbott did not file an answer to the complaint. Instead, he emailed the DOJ on July 7, asking the government to withdraw the complaint because he had filed his combined report. The DOJ declined but offered to discuss settlement. Abbott did not

respond. At the DOJ's request, the Clerk of Court entered a default against Abbott on September 7, 2023.

Abbott finally appeared in the case in December 2023 and requested mediation. After an unsuccessful mediation, the district court denied the DOJ's motion for default judgment, explaining that Abbott was "no longer essentially unresponsive." J.A. 4 (cleaned up). But Abbott did not move to set aside the default. The district court therefore deemed him to have admitted the complaint's well-pleaded allegations[1] — a decision that Abbott does not challenge on appeal.

The parties briefed cross-motions for summary judgment. On September 15, 2025, the district court granted the government's motion and denied Abbott's. The district court determined that Abbott had willfully failed to file the required reports and imposed a civil penalty of $40,000 plus a $200 late-filing fee. Abbott timely appealed.

## II.

We review the district court's order granting summary judgment *de novo*, "viewing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in his or her favor." *Oviedo v. WMATA*, 948 F.3d 386, 392 (D.C. Cir. 2020) (cleaned up). The moving party is entitled to summary judgment if it shows "that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law." *Id.* (quoting Fed. R. Civ. P. 56(a)).

We review the district court's imposition of a civil penalty for abuse of discretion. *FEC v. Craig for U.S. Senate*, 816 F.3d 829, 847 (D.C. Cir. 2016). The district court abused its discretion "if it did not apply the correct legal standard or if it misapprehended the underlying substantive law," *id.* (cleaned up), or if it issued a fine that was "clearly excessive," *Moffer v. Watt*, 690 F.2d 1037, 1040 (D.C. Cir. 1982) (per curiam) (citation omitted).

## III.

Abbott argues that the district court erred when it concluded that his late filing was "willful" under the EIGA, and that the court abused its discretion in levying a substantial civil penalty without giving appropriate weight to mitigating factors. We disagree.

### A. Willfulness

The EIGA imposes civil liability on an individual who "knowingly and willfully fails to file or report" required information. 5 U.S.C. § 13106(a)(1). Abbott does not dispute that his failure to make a timely filing was "knowing," so we focus on "willfulness."

Generally, "in order to establish a willful violation of a statute, the government must prove that the defendant acted with knowledge that his conduct was unlawful." *Bryan v. United States*, 524 U.S. 184, 191–92 (1998) (cleaned up); *accord United States v. Burden*, 934 F.3d 675, 689–92

---

[1] This is a standard practice in the district court, *see, e.g.*, *Argonaut Ins. Co. v. Lynchburg Steel & Specialty Co.*, 308 F. Supp. 3d 218, 221 (D.D.C. 2018), and is consistent with the practices of other jurisdictions, *see, e.g.*, *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013); *Escalante v. Lidge*, 34 F.4th 486, 489 (5th Cir. 2022); *DirecTV, Inc. v. Huynh*, 503 F.3d 847, 851 (9th Cir. 2007); *Giovanno v. Fabec*, 804 F.3d 1361, 1366 (11th Cir. 2015).

(D.C. Cir. 2019). Although we have not defined "willful" in the EIGA context, the district court has held that an EIGA violation is willful when the violator "intentionally disregards the statute or is indifferent to its requirements." *United States v. Gant*, 268 F. Supp. 2d 29, 33 (D.D.C. 2003) (citation omitted); *accord United States v. Manigault Newman*, 594 F. Supp. 3d 1, 6 (D.D.C. 2022). Abbott does not challenge that formulation of the standard — which is consistent with the ordinary meaning of "willful" — so we apply that undisputed standard here.

There is no genuine dispute as to the material facts related to Abbott's "willfulness." Beginning in May 2022, FLRA officials contacted Abbott repeatedly — by email, voicemail, and certified mail — to remind him of his obligation to file a combined annual and termination report. Abbott acknowledged that obligation in his June 29 email to Osborne, when he asked her whether he owed "1 or 2 reports," J.A. 43; and then again on November 25, 2022, when he told her, "I will be doing it," J.A. 58. But Abbott did not file the report until May 31, 2023. That sequence of events establishes as a matter of law that Abbott violated the EIGA by willfully failing to file a required report when it was due. *See In re U.S. OPM Data Sec. Breach Litig.*, 928 F.3d 42, 64 (D.C. Cir. 2019) (holding that an agency's decision "to continue operating in the face of . . . repeated and forceful warnings" was "willful failure" under the Privacy Act); *Donovan v. Williams Enters., Inc.*, 744 F.2d 170, 180 (D.C. Cir. 1984) (holding that violations of Occupational Safety and Health Administration regulations were willful where the "Secretary's warnings and advice went unheeded and the violations continued").

Abbott invokes alleged extenuating circumstances to dispute the willfulness of his actions. We are unpersuaded.

First, Abbott asserts that FLRA leadership locked him out of his office and computer on May 17, 2022, preventing him from accessing prior reports needed to complete the final combined report. But Abbott's prior reports were available through the OGE's website, and he ultimately filed the combined report without ever regaining office access.[2] The lockout therefore does not create a genuine issue of material fact.

Second, Abbott explains that he was out of the country for three and a half weeks in February and March 2023 and was the victim of an assault and battery in May 2023. But Abbott had been out of compliance for six months before any of those circumstances arose, and the circumstances therefore do not create a genuine dispute about the willfulness of his conduct.

In sum, the district court correctly concluded that the government was entitled to judgment as a matter of law.

*B. Penalty Assessment*

Upon finding a willful violation of the EIGA, the district court was empowered to "assess . . . a civil monetary penalty in any amount" up to an inflation-adjusted statutory

---

[2]     Abbott retorts that he needed those materials to ensure accuracy and consistency with his prior reports, but that the government's litigation threat left him "no other choice" but to file without them. Reply Br. 6. That response comes up short. Abbott's decision to file under threat of litigation demonstrates that he was able to make the filing all along but chose not to do so. *See Manigault Newman*, 594 F. Supp. 3d at 7 ("Even if the documents were necessary to complete her report — though they were not — that fact would not refute that [the defendant] willfully disregarded the EIGA's requirements for more than a year." (cleaned up)).

4

maximum. 5 C.F.R. § 2634.701(b) (2023). The applicable maximum for Abbott, at the time the government filed suit, was $71,316. *Id.* (Table 1). The district court weighed four factors in selecting a penalty amount: "(1) whether the violation was flagrant and ongoing; (2) the filer's prior history of compliance with the EIGA; (3) whether the filer was motivated by a desire to avoid reporting transactions; and (4) the filer's financial resources." *United States v. Abbott*, No. 23-cv-1555, 2025 WL 2643484, at *8 n.9 (D.D.C. Sep. 15, 2025). Based on those factors, the court imposed a penalty of $40,000 — about fifty-six percent of the maximum. *Id.* at *8. Abbott does not challenge the district court's methodology and argues only that the district court failed to give appropriate weight to mitigating factors in arriving at that amount. We are again unpersuaded.

The district court predominantly relied on the first and fourth of the cited factors, noting that Abbott's violation was flagrant and ongoing, and that Abbott had the financial resources to pay the penalty. *Abbott*, 2025 WL 2643484, at *8–10. The district court observed that Abbott ignored more than a dozen reminders issued over a nine-month period and filed his report only after the DOJ initiated litigation. *Id.* at *8–9. And the court reviewed Abbott's sealed financial disclosures and concluded that his personal assets — "setting aside those held in trust for family members" — were sizeable enough to support a significant penalty. *Id.* at *10. The other two factors considered by the court were favorable to Abbott: The district court credited his strong prior compliance record and found that he had no meaningful motive to conceal his finances. But the district court determined that those factors did not excuse the seriousness and duration of Abbott's noncompliance. *Id.* at *9–10. Overall, the record reflects an appropriate weighing of the relevant considerations.

In assessing the monetary penalty, the district court reasonably held "that a $40,000 penalty is necessary to effectuate the deterrent aims of the EIGA." *Abbott*, 2025 WL 2643484, at *10 (cleaned up). Although Abbott points to EIGA penalties imposed by other judges to suggest that his penalty was an outlier,[3] the district court adequately distinguished those cases. *See id.* at *8–10. At bottom, the district court acted within the "zone of reasonableness," *Morley v. CIA*, 894 F.3d 389, 391, 395 (D.C. Cir. 2018), and we see no basis to disturb its ruling.

For the foregoing reasons, we affirm the judgment of the district court.

\*     \*     \*

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

**Per Curiam**

---

[3] *See, e.g.*, *United States v. Neelon*, No. 23-cv-3177, 2024 WL 2153099, at *1 (D.D.C. May 14, 2024) (assessing penalty of $12,300 where maximum penalty was $73,627); *United States v. Lairy*, No. 19-cv-2488, 2020 WL 4039176, at *2–3 (D.D.C. July 17, 2020) (assessing penalty of $10,200 where maximum penalty was $60,517); *Manigault Newman*, 594 F. Supp. 3d at 8–9 (assessing maximum penalty of $61,585); *Gant*, 268 F. Supp. 2d at 34 (assessing maximum penalty of $11,000).

5

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY: /s/
Michael C. McGrail
Deputy Clerk